Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-10-00887-CR

Sheronda R. **MALCOLM**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR7900
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  February 1, 2012

AFFIRMED

Sheronda R. Malcolm was convicted by a jury of theft.  On appeal, Malcolm challenges the sufficiency of the evidence to support her conviction and contends the omission of the statutory definition of the term "deception" from the jury charge resulted in egregious harm.  We affirm the trial court's judgment.

## BACKGROUND

While she was unemployed, Malcolm qualified for electronic food stamp and Medicaid benefits in August of 2007. Malcolm obtained a job in October of 2007. When Malcolm applied for recertification of the benefits in January of 2008, however, she marked on the application that she had not been employed during the prior three months. Malcolm was indicted for the offense of theft, and a jury found her guilty as charged in the indictment.

## SUFFICIENCY

In her first issue, Malcolm challenges the sufficiency of the evidence to support her conviction. In *Brooks v. State*, the Texas Court of Criminal Appeals held that the only standard a reviewing court should apply in reviewing sufficiency challenges is the *Jackson v. Virginia* legal sufficiency standard. 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Adames v. State*, No. PD-1126-10, 2011 WL 4577870, at *4 (Tex. Crim. App. Oct. 5, 2011). As a reviewing court, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*.

Malcolm contends *Brooks* overturned the line of cases setting forth the state-law standard for determining the essential elements of the offense against which we measure the sufficiency of the evidence. The Texas Court of Criminal Appeals, however, recently held that those cases remain valid law, and the elements of the offense are drawn from the hypothetically correct jury charge for the case. *Id*. at *4-5. A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. at \*4. Thus, in a sufficiency analysis, we "apply the *Jackson* standard of review to the hypothetically correct jury charge." *Id*. at \*5.

Malcolm contends that the evidence failed to show that she intended to deprive the Texas Department of Human Resources of electronic food stamp and Medicaid benefits. During oral argument, Malcolm's attorney argued that absent evidence of intent, Malcolm would be convicted based on strict liability without proof of a requisite *mens rea*.

Malcolm relies on her testimony that she was unaware that she was required to report an increase in her income that would affect her eligibility for the benefits and that errors on her application for recertification were mistakes made in good faith. Malcolm also relies on her testimony that she was contacted in October of 2007 by a Department employee and informed the caller that she had an interview for a job. Malcolm testified she received two "documents for employment" from the Department about three or four weeks after the call. Malcolm testified that she completed one document reporting how much she was being paid and a second document authorizing her employer to release information to the Department. Malcolm further testified that she sent copies of her last three check stubs with the documents. With regard to the recertification application, Malcolm testified that she also submitted her check stubs with the application and never personally met with a Department employee regarding the recertification application. Finally, Malcolm testified that she expected her benefits to remain the same because her new job paid her far less than the job she had before she became unemployed.

The testimony of other witnesses, however, indicated that Malcolm received verbal and written notice that she was required to report any increase in her income after she initially qualified for benefits in August of 2007 while she was unemployed. The written notice stated

that Malcolm qualified for benefits based on a budget showing her gross monthly income to be $1,263.92, and that Malcolm was required to report any change in income that would result in her receiving gross monthly income over $2,167.00. The evidence further established that Malcolm became employed in October of 2007; however, no documentary evidence supported Malcolm's testimony that she submitted documentation regarding her employment after October of 2007. The documentary evidence does, however, include the application for recertification of benefits that Malcolm submitted in January of 2008 in which she failed to list the income from her job and marked that she had not been employed for the past three months. The Department's files did not include any check stubs submitted with the recertification application. A Department employee further testified that he personally interviewed Malcolm in January of 2008, and Malcolm told him that she was not employed and had not been employed since July of 2007. Although Malcolm denied meeting with the employee and gave reasons for the manner in which she completed the application, the jury is the sole judge of the witnesses' credibility and could have disbelieved Malcolm's testimony. *Adames*, 2011 WL 4577870, at *4. The jury could have inferred from the recertification application that Malcolm intended to deprive the Department of benefits by deceiving the Department about her employment status. Because the evidence is sufficient to support the jury's verdict, we overrule Malcolm's first issue.

### JURY CHARGE

The jury charge provided, in pertinent part, that the jury should find Malcolm guilty of theft if the jury found beyond a reasonable doubt that she intended to deprive the Department of property by unlawfully appropriating benefits without the Department's effective consent. The jury charge defined "effective consent" and stated, "Consent is not effective if induced by deception or coercion."

In her second issue, Malcolm asserts that the jury charge was erroneous because it omitted the statutory definition of "deception."[1] Typically, a jury charge should include the statutory definition of a word used in the charge. *See Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986). Assuming, without deciding, that the charge in the instant case was erroneous for failing to include the statutory definition of "deception," the omission of the definition must still be examined in light of the entire record of the case to determine whether Malcolm was harmed by the omission. *See Mosley v. State*, 686 S.W.2d 180, 182 (Tex. Crim. App. 1985). Because Malcolm did not object to the charge, the error does not result in a reversal unless it was so egregious and created such harm that she was denied a fair trial. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). To determine egregious harm, a reviewing court examines the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id*. The appellant must have suffered actual, rather than theoretical, harm. *Id*. Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Id*. at 461-62.

---

[1] "Deception" is statutorily defined as:
(A)　creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
(B)　failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
(C)　preventing another from acquiring information likely to affect his judgment in the transaction;
(D)　selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
(E)　promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.
TEX. PENAL CODE ANN. § 31.01(1) (West Supp. 2011).

Malcolm primarily relies on the holding in *MacDougall v. State*, 702 S.W.2d 650 (Tex. Crim. App. 1986), to support her contention that the omission of the statutory definition of deception was reversible error. In *MacDougall*, the jury was instructed to find the appellant guilty if they found the appellant unlawfully appropriated a car without the effective consent of the owner. 702 S.W.2d at 651. The evidence showed that the owner allowed the appellant to take the car and contacted the police only when appellant failed to return it. *Id*. Because the owner permitted the appellant to take the car, the State was required to prove that the appellant initially acquired the car by deception. *Id*. at 652. Accordingly, the court emphasized the importance of the term "deception" in the jury charge based on the evidence presented. *Id*. More importantly, the appellant in *MacDougall* objected to the omission; therefore, the record was required to show only some harm, not egregious harm, for the error to result in reversal. *Id*. at 651.

Malcolm's testimony and the testimony of the other witnesses conflicted with regard to whether Malcolm personally met with the Department employee to review her recertification application, but the evidence of the information provided by Malcolm in the application is uncontroverted. The only dispute was whether the information was provided with an intent to deceive the Department or as a result of a good faith mistake or error in calculations. There is nothing in the record to indicate that the jury was misled or left ignorant of how the term "deception" was to be applied in evaluating the evidence. *See Arline*, 721 S.W.2d 353. In fact, two of our sister courts have concluded that the statutory definition of deception is more expansive than the common usage and its omission likely benefits a defendant. *See Martin v. State*, No. 10-03-00071-CR, 2004 WL 2305154, at *2 (Tex. App.—Waco Oct. 13, 2004, pet.

ref'd) (not designated for publication); *Shelley v. State*, No. 01-86-00821-CR, 1987 WL 14554, at *3 (Tex. App.—Houston [1st Dist.] July 23, 1987, no pet.) (not designated for publication).

In its closing arguments, the State argued that Malcolm committed welfare fraud and acted intentionally in falsifying documents to obtain government benefits. The State asserted that Malcolm checked that she had not been employed during the last three months in her recertification application despite the fact that she was employed because she wanted to retain the same level of benefits. The State also referred to Malcolm's personal interview, and her statement that she was not employed as being false. The State contended that because of Malcolm's "repeated falsifications," she was able to retain the benefits. The State concluded, "She did it by fraud, and that's why it's a theft." Interestingly, the State's closing argument was consistent with defense counsel's opening argument in which she stated, "As you know, my client is charged with welfare fraud, and the State is going to attempt to show through their evidence that my client intentionally and knowingly engaged in fraud, that she meant to either by lie or intentional omission take benefits that she was not entitled to" receive. After examining the entire record of the case in light of the disputed issues and arguments presented, we do not believe the omission of the statutory definition of "deception" in this case rises to the level of egregious harm. Accordingly, we overrule Malcolm's second issue.

## CONCLUSION

Because the evidence is sufficient to support the jury's verdict and the omission of the statutory definition of "deception" in the jury charge did not result in egregious harm, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH