**Opinion filed April 4, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00227-CR

_____

## APOLINAR VASQUEZ SAUCEDO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-21-0784-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, Apolinar Vasquez Saucedo, appeals his conviction of evading arrest with a vehicle, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2016). A jury assessed his punishment at two years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced him accordingly. In a single issue on appeal,

Appellant contends that the trial court erred when it failed to define "knowingly" in the abstract portion of the jury charge, and that this error resulted in egregious harm. We affirm.

*Factual and Procedural History*

Police investigation of a bar fight in Odessa became a pursuit when Appellant refused to pull over for the police. Officer Felipe Cobos with the Odessa Police Department responded to a report of a disturbance in the parking lot of Black Gold, a bar in Odessa. During his investigation, bystanders approached Officer Cobos and told him that one of the men involved in the fight was leaving in a black pickup, driving westbound on University Boulevard. Officer Cobos relayed this information to other responding officers, and Sergeant Tyler Rodgers, en route to Black Gold, began to search for the vehicle. Sergeant Rodgers observed a black pickup traveling away from Black Gold and activated his emergency lights to initiate an investigative stop. But the driver, later identified as Appellant, did not stop. Instead, without speeding, Appellant drove toward and waited through a traffic light, turned south onto Grandview Avenue, and continued to drive, all while Sergeant Rodgers's emergency lights flashed directly behind him. Appellant kept driving while Sergeant Rodgers continued to pursue Appellant with his lights activated, before Officer Matt Muehlbrad joined, making a U-turn directly behind Appellant. Sergeant Rodgers's dashcam footage showed two other officers following in their vehicles with lights and sirens activated. Appellant passed multiple areas suitable for stopping during the pursuit.

But Appellant continued to drive. While stopped at a second traffic light, an officer verbally directed Appellant to turn off his vehicle. Instead of complying,

Appellant waited for the light to turn green and continued driving. Finally, Appellant pulled into a parking lot and exited his vehicle with raised hands.

Officers on scene detained Appellant and placed him into the back of Officer Tyler Thelen's vehicle. Officer Thelen advised Appellant of his *Miranda* rights,[1] and Appellant agreed to talk with him. Appellant said that he defended himself after being assaulted "outside the . . . club." Appellant admitted that he saw the vehicles behind him and recognized them to be police vehicles. When Officer Thelen asked why Appellant did not pull over, Appellant responded "I didn't want to get arrested."

On appeal, Appellant contends that the trial court committed reversible error when it omitted the definition of "knowingly" or "with knowledge" in the abstract portion of the charge, denying him a fair and impartial trial.

*Standard of Review*

A review of alleged jury charge error involves two steps. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we determine if there is any error; second, if there is error, we must determine if the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.

Not all charge errors require reversal on appeal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the charge is erroneous, then on appeal we must first determine if the defendant objected to the erroneous charge. *Id.* If the defendant objected to the erroneous charge, we will reverse if the record shows that the error caused "some harm." *Id.* Conversely, if the defendant failed to object, an appellate court may only reverse upon a finding of "egregious harm." *Id.* Egregious harm is

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).

harm that denies the defendant a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). This is a difficult standard to meet, and the harm must be shown in the record. *Reeves*, 420 S.W.3d at 816. To assess harm, the appellate court reviews the *Almanza* factors: (1) the jury charge itself; (2) the state of the evidence, including weight and probative value; (3) counsel's arguments; and (4) any other relevant information in the trial record. *Vega v. State*, 394 S.W.3d 514, 521 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

*Analysis*

Appellant concludes that the unobjected-to omission of the definition of "knowingly" or "with knowledge" from the abstract portion of the jury charge was error. The State responds that "knowledge" that a peace officer is attempting to arrest or detain the person is an element of an evading-arrest offense but does not simply concede error. Rather, the State contends that, even if the trial court's omission was error, that omission did not cause Appellant egregious harm.

The trial court is obligated to provide the jury with the statutory definitions that affect the meaning of the elements of an offense. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *see* TEX. CODE CRIM. PRO. ANN. art. 36.14 (West 2007) (the trial court must instruct the jury on the law applicable to the case); *Morris v. State*, No. 11-11-00223-CR, 2013 WL 3877789 at *6 (Tex. App.—Eastland July 25, 2013, pet. ref'd) (mem. op., not designated for publication) (If a phrase, term, or word that the jury must use to properly resolve an issue is statutorily defined, the trial court must submit the statutory definition to the jury.). The Texas Court of Criminal Appeals recently examined Section 38.04 of the Penal Code and held that it requires the State to prove, in relevant part, the following elements:

4

(1) the defendant (2) intentionally fled (3) from a peace officer (4) with knowledge he is a peace officer, (5) with knowledge the peace officer is attempting to arrest or detain the defendant, and (6) the attempted arrest or detention is lawful. *Nicholson v. State*, 682 S.W.3d 238, 245 (Tex. Crim. App. 2024). The court further held that the State is *not* required to prove that the defendant *knew* the attempted arrest or detention was lawful. *Id.* at 240. Because the fourth and fifth elements require knowledge, the court was obligated to provide the statutory definition of "knowingly" or "with knowledge" as it related to the circumstances of Appellant's conduct. *See* PENAL § 38.04; *Riggs v. State*, 482 S.W.3d 270, 275 (Tex. App.—Waco 2015, pet. ref'd) (the conduct element applicable to the "knowledge" element of an evading offense is "circumstances surrounding the conduct"); *Ester v. State*, 151 S.W.3d 660, 664 (Tex. App.—Waco 2004, no pet.) (omission of "knowledge" definition constituted error); *Vargas v. State*, No. 10-20-00097-CR, 2021 WL 299088 at *7 (Tex. App.—Waco Jan. 27, 2021, no pet.) (mem. op., not designated for publication) (same).

Because Appellant did not object to this error at trial, we must next determine if it caused egregious harm such that Appellant was deprived of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. To do so, we must examine the record using the *Almanza* factors: (1) the jury charge as a whole; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) counsel's arguments; and (4) any other relevant information in the trial record that informs our analysis.

First, we review the jury charge as a whole. The charge instructed the jury to give terms their common meanings unless otherwise defined by the charge. The "failure to give an abstract instruction [or definition] is reversible only when such

5

an instruction [or definition] is necessary to a correct or complete understanding of concepts or terms in the application part of the charge." *Alcoser v. State*, 603 S.W.3d 160, 165 (Tex. Crim. App. 2022) (quoting *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

We assume the jury applied the commonly understood meaning of "know" in the absence of a statutory definition. *See Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983) ("[W]hen the statutory definition is not included in the charge, it is assumed the jury would consider the commonly understood meaning in its deliberations."); *McKinley v. State*, No. 11-15-00051-CR, 2017 WL 1074365 at *2 (Tex. App.—Eastland Mar. 16, 2017, pet. ref'd) (mem. op., not designated for publication). The statutory definition of "knowingly" does not substantially differ from the common meaning of the term "know." *Mathis v. State*, 858 S.W.2d 621, 622 (Tex. App.—Fort Worth 1993, pet. ref'd) (analyzing the common meaning of the term "know" as it relates to the omission of the statutory definition of "knowingly" or "with knowledge" and holding that the terms are not substantially different from the common usage of those terms); *cf. Carbajal v. State*, No. 08-18-00081-CR, 2019 WL 5485259 at *4 (Tex. App.—El Paso Oct. 25, 2019, no pet.) (not designated for publication) (holding that the failure to define "with intent" was not egregiously harmful, noting that the common and statutory meanings of "intent" were similar.). Merriam-Webster defines "know" in several ways, one of which is "to be aware of the truth or factuality of." *Know*, MERRIAM-WEBSTER'S DICTIONARY (11th ed. 2020). In relevant part, the definition in Section 6.03 of the Texas Penal Code uses similar terms:

> A person acts knowingly, or with knowledge, with respect . . . to circumstances surrounding his conduct when he is aware . . . that the circumstances exist.

PENAL . § 6.03(b) (West 2021). We conclude that the mental state "knowingly," as it relates to the existing circumstances, is not substantially different from the common usage and understanding of those terms. *See Mathis*, 858 S.W.2d at 622.

Moreover, here, even though there is a special definition in law, the definition of "knowingly" is among terms commonly used, "simple in themselves."[2] The jury could have understood the term's meaning without a definition to "correct or complete" its understanding of the concepts and terms in the application portion of the charge. And because the common and statutory definitions are similar, its definition was not necessary to a correct or complete understanding of the concepts or terms in the application part of the charge. *McIlvennia v. State*, No. 03-14-00352-CR, 2016 WL 3361185 at *9 (Tex. App.—Austin June 10, 2016, pet. ref'd).

Moreover, the application portion correctly instructed the jury. An application paragraph that properly instructs the jury weighs against a finding of egregious harm. *Arevalo v. State*, 675 S.W.3d 833, 854–55 (Tex. App.—Eastland 2023, no pet.). The application paragraph here did so by instructing the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about March 6, 2021, in Ector County, Texas, the Defendant, APOLINAR VASQUEZ SAUCEDO, while using a vehicle, did then and there intentionally flee from Tyler Thelen, a person the defendant knew was a peace officer who was attempting lawfully to arrest or

---

[2]*See Druery v. State*, 225 S.W.3d 491, 509 (Tex. Crim. App. 2007) (quoting *King v. State*, 553 S.W.2d 105, 107 (Tex. Crim. App. 1977) (using the phrase "simple in themselves" to describe commonly used words)).

detain the defendant, then you must find the Defendant Guilty of the offense of Evading Arrest or Detention with a Vehicle.

The language contained in this application paragraph substantially tracks the language of the operative statute, Section 38.04 of the Penal Code. *See* PENAL § 38.04. The paragraph effectively restricted the jury's deliberations to the allegations in the indictment. Viewing the trial court's charge in its entirety, the trial court's instructions correctly tied the statutory requirement of "knowledge" to the peace officer's status as an officer and the peace officer's attempt to arrest or detain Appellant. This factor weighs against a finding of egregious harm.

Second, we review the entirety of the evidence presented at trial. The state of the evidence overwhelmingly shows that Appellant knew that peace officers were attempting to arrest or detain him. Dashcam and bodycam footage from three different officers showed Appellant's evasion of police officers in his vehicle. Appellant was initially pursued by a single officer before more joined, all with lights and sirens activated on their vehicles. At a stoplight, one of the officers verbally directed Appellant through the PA system to turn off his vehicle. After Appellant's arrest, he admitted to Officer Thelen that he knew that the police were behind him and that he simply did not want to be arrested. Thus, the evidence strongly indicates that Appellant knew that peace officers were attempting to arrest or detain him. This factor weighs against a finding that Appellant suffered egregious harm.

Third, we review the arguments of trial counsel. When reviewing the parties' arguments, we look to whether statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the error. *Arevalo*, 675 S.W.3d at 855 (citing *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015)). Here, both the State and Appellant's trial counsel focused on the element of

knowledge. In closing, his trial counsel maintained that Appellant did not know Officer Thelen was pursuing him, while the State told the jury that it was "impossible to argue" that the defendant did not know he was being pursued for the purpose of arrest or detainment by law enforcement. Neither party misstated the law; rather, both sides emphasized the element of knowledge as a factual dispute to the jury. We cannot say this emphasis from both sides exacerbated or ameliorated the absence of a relevant statutory definition. This factor does not weigh for or against a finding that Appellant suffered egregious harm.

Fourth, we review any other relevant information in the record. In voir dire, the State briefly and accurately referenced the element of knowledge when it told the venire panel that "[y]ou have to know the person who is following you is, in fact, a police officer." Defense did not mention knowledge during voir dire, and the jury did not send out any relevant notes or indicate any confusion about the terms of the court's charge during its deliberations. *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (the absence of any jury note during deliberation expressing confusion as to the challenged instruction weighed in favor of no egregious harm). Nothing else suggests that Appellant was harmed from the absence of the definition. This factor does not weigh in favor of finding that Appellant suffered egregious harm.

We note that, rather than specifically addressing the *Almanza* factors, Appellant quotes and refers to the concurring opinion in *MacDougall v. State* in support of his argument on appeal. 702 S.W.2d 650, 652 (Tex. Crim. App. 1986). In *MacDougall*, the Court of Criminal Appeals found some harm occurred because the trial court refused to define "deception," and theft by deception was the only theory available to the State. *Id.* at 651–52. Quoting language from Judge Teague's

concurring opinion, Appellant contends that "the jury was clearly unable to correctly apply the law to the facts of this case, or to correctly judge the merits of the case; thus, the appellant was deprived and denied the fair trial that the Constitutions guaranteed him." *Id.* at 653 (Teague, J., concurring).

*MacDougall* is distinguishable from this case. For example, *MacDougall* analyzes a different statutory definition for a different offense, deception was the only theory available to the State, and the trial court in its charge instructed that consent is not effective if induced by deception, all of which factored into the court's "some harm" analysis based on the trial court's omission of the definition of "deception." *Id.* at 651. In *MacDougall*, unlike the case before us today, Appellant had requested the instruction and the trial court refused; therefore, the court examined the record for "some harm," a lower standard than that of "egregious harm," the standard that we are required to apply in this case. *Id.* at 651–52; *see Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) ("Egregious harm is a 'high and difficult standard' to meet."). We believe that with no factor weighing in favor of egregious harm, the "jury was unlikely to have been misled given the fact that [their] common sense [as to the meaning of 'knowingly'], the correct abstract paragraph, and correct jury arguments" most likely allowed them to properly apply the law. *Gelinas*, 398 S.W.3d at 709–10.

Viewing the jury charge as a whole, the state of the evidence, the arguments of counsel, and other relevant evidence in the record, we conclude that Appellant did not suffer egregious harm when the trial court omitted the definition of "knowingly" in its charge. *See Vargas*, 2021 WL 299088 at *7 (the trial court's erroneous omission of the definition of "knowingly" in an evading case did not cause the appellant to suffer egregious harm); *see also Gelinas*, 398 S.W.3d at 709–10. The

trial court's failure to provide the statutory definition of "knowingly" was not so harmful that Appellant was denied a fair and impartial trial. *See Vargas*, 2021 WL 299088, at *7. Accordingly, we overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

April 4, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.